UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARCOS CRUZ and ELOY MARTINEZ
BAUTISTA, *individually and on behalf of*
*others similarly situated*,

                                    Plaintiffs,

                                                                REPORT AND
            -against-                                           RECOMMENDATION
                                                                20 CV 5120 (MKB)(RML)

JJ'S ASIAN FUSION INC. d/b/a JJ'S
FUSION, ZI JIE LIN, and HU DOE,

                                    Defendants.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

            By order dated April 13, 2021, the Honorable Margo K. Brodie, United States District

Judge, referred plaintiffs' motion for default judgment to me for report and recommendation.  For

the reasons stated below, I respectfully recommend that plaintiffs' motion be granted and that

plaintiffs be awarded $822,251 in damages, plus pre-judgment interest, post-judgment interest,

and $3,605 in attorney's fees and costs.

## BACKGROUND AND FACTS

            Plaintiffs Marcos Cruz ("Cruz") and Eloy Martinez Bautista ("Bautista") (together,

"plaintiffs") commenced this wage and hour action on October 23, 2020,[1] against defendants JJ's

Asian Fusion Inc. d/b/a JJ's Fusion ("JJ's Fusion"), Zi Jie Lin ("Lin"), and Hu Doe ("Doe")

---

[1] Counsel for plaintiffs has changed since the time this case commenced.  On November 6, 2021,
Michael Faillace moved to withdraw as counsel for plaintiffs.  (Motion to Withdraw, dated Nov.
6, 2021, Dkt. No. 22.)  He noted in his motion that his last day of work with the law firm of
Michael Faillace & Associates, P.C. would be November 7, 2021 and that he expected to be
suspended from practice by the Southern District of New York effective November 8, 2021.
(Id.)  The motion to withdraw was granted on November 8, 2021.  (See Order, dated Nov. 8,
2021).  Plaintiffs are now represented by CSM Legal P.C.  (Notice of Appearance, dated Nov. 4,
2021.)

(collectively, "defendants"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL") §§ 190, *et seq.* (Complaint, dated Oct. 23, 2020 ("Compl."), Dkt. No. 1.) Defendants Lin and Doe (together, the "individual defendants") are alleged to be owners, officers, and/or agents of JJ's Fusion, a restaurant located at 37-05 31st Avenue in Queens, New York. (Id. ¶¶ 2-3, 24-27.) Defendants are alleged to have employed Cruz as a cook and Bautista as a delivery worker, from March 21, 2012 through March 16, 2020 and November 2017 through October 6, 2020, respectively. (Id. ¶¶ 21, 23, 38.) All defendants were properly served with the summons and complaint. (See Affidavit of Service of Max Schuster, sworn to Nov. 6, 2020, Dkt. No. 11; Affidavit of Service of Cecil Holloway, sworn to Nov. 23, 2020, Dkt. No. 12; Affidavit of Service of Cecil Holloway, sworn to Nov. 16, 2020, Dkt. No. 13.) Defendants have failed to answer or otherwise move with respect to the complaint.

Plaintiffs moved for entry of default pursuant to Federal Rule of Civil Procedure 55(a) as to all defendants on March 22, 2021. (See Request for Certificate of Default, dated Mar. 22, 2021, Dkt. No. 17.) On March 26, 2021, the Clerk of the Court noted the defaults of JJ's Fusion as well as the individual defendants. (See Clerk's Entry of Default, dated Mar. 26, 2021, Dkt. No. 18.) On April 13, 2021, plaintiffs moved for default judgment. (See Motion for Default Judgment, dated Apr. 13, 2021, Dkt. No. 19.) Chief Judge Brodie referred plaintiffs' motion to me on April 13, 2021. (See Order Referring Motion, dated Apr. 13, 2021.)

Plaintiffs move for default judgment on claims under the FLSA and NYLL for defendants' failure to (1) pay them the minimum hourly wage, (2) pay them overtime compensation, (3) pay them spread of hours wages, (4) provide proper wage notices and wage statements, and (5) pay for tools of the trade. (Compl. ¶¶ 105, 112-13, 116-17, 121-22, 125-26,

130, 133, 136, 139; see also Affirmation of Michael Faillace, Esq. in Support of Plaintiffs'
Motion for Default Judgment, dated Apr. 13, 2021 ("Faillace Aff."), Dk. No. 20.)  Plaintiffs seek
to recover unpaid minimum wages, overtime wages, spread of hours wages, liquidated damages,
tools of the trade reimbursements, statutory damages, pre-judgment interest, and attorney's fees
and costs.  (Faillace Aff. ¶ 62; see also Damages Chart, attached as Ex. H to the Faillace Aff.,
Dkt. No. 20-8.)

DISCUSSION

A.  Liability

A defendant's "default is deemed to constitute a concession of all well pleaded
allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,
158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to
accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the
plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain
Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether
[plaintiffs'] allegations establish [defendants'] liability as a matter of law."  Id.

Plaintiffs have sufficiently pleaded factual allegations that give rise to liability for
unpaid minimum wages under the FLSA and the NYLL (see Compl. ¶¶ 38, 45-51, 68-72, 85-86,
108-13. 119-22), unpaid overtime wages under the FLSA and NYLL (id. ¶¶ 38, 45-53, 67-72,
84-86, 115-17, 124-26), unpaid spread of hours wages under the NYLL (id. ¶¶ 45, 68-69, 84,
128-30), tools of the trade costs (id. ¶¶ 60, 83, 138-39), and failure to provide proper wage
statements and wage notices under the NYLL (id. ¶¶ 57-59, 80-82, 99, 103-04, 132-33, 135-36).
The extent to which plaintiffs can recover damages for these violations initially depends on

3

whether: (1) their claims were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were plaintiffs' employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior. 29 U.S.C. § 255(a). Here, the complaint, which was filed on October 23, 2020, alleges willful violations of the FLSA. (See Compl. ¶¶ 97, 100, 102, 113, 117). Therefore, the FLSA's three-year statute of limitations applies. Because both plaintiffs allege that they were not properly paid wages between October 23, 2017 and October 23, 2020, I find that their claims are timely under the FLSA. (Id. ¶¶ 47-51, 68-72.) However, the portions of plaintiff Cruz's claims that occurred prior to October 23, 2017, see id. ¶¶ 21, 47-50, are not timely under the FLSA. Plaintiffs may only recover for the federal claims that occurred on or after October 23, 2017.

For plaintiffs' claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint. See N.Y. LAB. LAW §§ 198(3), 663(3). I find the claims that occurred on or after October 23, 2014 are timely under the NYLL. Plaintiffs may recover under the NYLL for claims that occurred on or after October 24, 2014.

2. Coverage Under the FLSA and NYLL

Since the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiffs must show that (1) they were defendants' employees, and (2) defendants were employers subject to the coverage of each statute. First, under the FLSA, an employee is "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g). Here, Cruz's allegations that he was hired by defendants on March 21, 2012 and worked at JJ's Fusion as a cook six days per week through

4

March 16, 2020 sufficiently demonstrate that he was defendants' employee.  (See Compl. ¶¶ 40-41, 45; Declaration of Marcos Cruz, dated Apr. 8, 2021 ("Cruz Decl."), Dkt. No. 20-6, ¶¶ 8-9, 14.)  Similarly, Bautista's allegations that he was hired by defendants in November 2017 and worked at JJ's Fusion as a delivery worker seven days a week through October 6, 2020 sufficiently establish that he was also defendants' employee.  (See Compl. ¶¶ 61-63, 68-69; Declaration of Eloy Martinez Bautista, dated Apr. 6, 2021 ("Bautista Decl."), Dkt. No. 20-7, ¶¶ 8-9, 14-15.)

Second, plaintiffs' allegations demonstrate that defendants were their employers. To establish that defendants are employers subject to the FLSA and NYLL, plaintiffs must show that defendants "possessed the power to control" their activities as workers considering the totality of pertinent "economic realit[ies]."[2]  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citation and quotation marks omitted).  To evaluate the "economic reality" of an alleged employee-employer relationship, courts look to various factors, none of which is individually dispositive.  Id.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id.  In addition, the FLSA requires employees to show their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 206(a).

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

Here, plaintiffs' allegations implicate the four factors listed above, thereby substantiating an "economic reality" in which defendants "possessed the power to control" their activities. Herman, 172 F.3d at 139. Plaintiffs assert that all defendants had the power to hire and fire them. (Compl. ¶¶ 26-27, 35, 106, 120; Bautista Decl. ¶ 5; Cruz Decl. ¶ 5.) They aver that each defendant exercised substantial control over work conditions as well as the policies and practices for plaintiffs' employment and compensation. (Compl. ¶¶ 31, 35, 106, 120; Bautista Decl. ¶ 5; Cruz Decl. ¶ 5.) Further, plaintiffs generally allege that each individual defendant had the power to "determine[] the wages and compensation of the employees of Defendants, including Plaintiffs, establish[] the schedules of the employees, [and] maintain[] employee records." (Compl. ¶¶ 26-27.) Thus, I find plaintiffs' allegations sufficiently establish that defendants were their employers.

Plaintiffs have also satisfied the FLSA's interstate commerce requirement. To show they were "employed in an enterprise engaged in commerce," 29 U.S.C. § 206(a), plaintiffs allege that defendants, both separately and jointly, had annual gross sales greater than $500,000 each year from 2014 to 2020 and that defendants and their enterprise were engaged in interstate commerce. (Compl. ¶¶ 36-37.) Although this allegation is conclusory insofar as it restates the statutory definition of enterprise coverage while only providing the vague factual allegations that "numerous items that were used in the restaurants on a daily basis [we]re goods produced outside of the State of New York" (id. ¶ 37) and that plaintiffs both "regularly handled goods in interstate commerce, such as food and other supplies produced outside of the State of New York" (id. ¶¶ 42, 65), multiple courts in this district have held that similar conclusory allegations may establish liability on a motion for default judgment where plaintiffs handled goods or items that originated out-of-state. See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y.

6

2015) ("[I]t is reasonable to infer that the myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State. . . . Las Delicias requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more. It is also reasonable to infer that some of these materials moved or were produced in interstate commerce."); see also Newman v. W. Bar & Lounge, Inc., No. 20 CV 1141, 2021 WL 2401176, at *5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants."); Acosta v. DRF Hosp. Mgmt. LLC, No. 18 CV 346, 2019 WL 1590931, at *9 (E.D.N.Y. Mar. 13, 2019) (finding that an allegation that a restaurant "had employees engaged in commerce or in the production of goods for commerce and had annual gross revenues of at least $500,000" is sufficient to satisfy the interstate commerce requirement), report and recommendation adopted, 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019).  I agree with courts that have adopted this approach, and I find that it is reasonable to infer that the food and restaurant supplies allegedly handled by defendants' employees "ha[d] been moved in or produced for [interstate] commerce."  (Compl. ¶¶ 37, 42, 65); 29 U.S.C. § 203(s)(1)(A)(i).  Plaintiffs have, therefore, sufficiently established that they are covered employees under both the FLSA and NYLL.

      3.   Joint and Several Liability

      Lastly, plaintiffs allege sufficient facts to establish that defendants were a single integrated enterprise for purposes of joint and several liability under both the FLSA and NYLL. "The overwhelming weight of authority is that a corporate officer with operational control of a

corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages." Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002). "In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants." Nuriddinov v. Masada III, Inc., No. 15 CV 5875, 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted).

Here, plaintiffs allege that individual defendants Lin and Doe are owners, officers, and agents of JJ's Fusion, and as such, "possess operational control over Defendant Corporation[], possess ownership interests in Defendant Corporation[], and control significant functions of Defendant Corporation[]." (Compl. ¶¶ 26-27, 29.) Further, plaintiffs allege that JJ's Fusion and the individual defendants are "joint employers" because they "act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees." (Id. ¶ 30.) These allegations demonstrate defendants' common ownership, management, and control of labor relations, which is "the central concern . . . underlying the single employer doctrine." Marin v. APU Foods Corp., No. 17 CV 3224, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (internal quotation marks and citations omitted). Therefore, I respectfully recommend that defendants be held jointly and severally liable.

B. Damages

Plaintiffs request damages in the amount of $942,039.97 for unpaid minimum wages, overtime wages, spread of hours pay, tools of the trade costs, liquidated damages, and pre-judgment interest. (See Faillace Aff. ¶ 17.) Once the court determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he

quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff[s] to establish [their] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

       1.  Unpaid Wages

      Plaintiffs allege that defendants willfully underpaid them in violation of the FLSA and NYLL by (1) not paying them the applicable minimum hourly rate, (2) not paying them overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of 40 hours in a workweek, and (3) failing to pay them one additional hour's pay at the basic minimum wage for each day their spread of hours exceeded 10 hours. (Compl. ¶¶ 108-13, 115-17, 119-22, 124-26, 128-30.)

       a.  *Minimum Wages*

      In the absence of any records and in light of defendants' default, plaintiffs' recollections suffice to establish damages for unpaid wages. "[W]hen an employer fails to maintain accurate records or where . . . no records have been produced as a consequence of a defendant's default, courts have held that the 'plaintiff's recollection and estimates of hours worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015) (noting that where an employer fails to maintain records of wages and hours, plaintiffs "need only prove that they performed work for which they were not properly compensated and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference") (internal quotation marks and citations omitted); Hart v. Rick's Cabaret Int'l, Inc., 60

F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair to allow employers to avoid, or reduce, their liability simply because they kept shoddy records.").

Here, Bautista asserts that from October 2014 to March 16, 2020, he worked from approximately 11:00 a.m. until 11:30 p.m. on Tuesdays, Wednesdays, and Thursdays and from approximately 11:00 a.m. until 12:00 a.m. or 12:40 a.m. on Fridays, Saturdays, and Sundays, totaling 73.5 to 76.5 hours per week. (Bautista Decl. ¶ 14.) Bautista avers that, depending on the year, he was paid a fixed salary of between $500 and $750 per week and that his wages did not vary even when he was required to stay later or work longer days. (Id. ¶¶ 16-21.) Cruz explains his hours as follows: from November 2017 to March 2020, he worked from approximately 11:00 a.m. until 10:30 p.m. on Sundays through Thursdays and from approximately 11:00 a.m. until 11:30 p.m. or 12:00 a.m. on Fridays and Saturdays; and from June to October 2020, he worked from approximately 11:00 a.m. until 11:00 p.m. on Sundays through Thursdays and from approximately 11:00 a.m. until 12:00 a.m. on Fridays and Saturdays. (Cruz Decl. ¶¶ 14-15.) Cruz avers that, depending on the year, he typically worked between 71 and 74 hours per week. (Id.)

Under both the FLSA and the NYLL, employees must be paid at least the minimum hourly wage for each hour that they work. 29 U.S.C. § 206; N.Y. LAB. L. § 652. The FLSA required defendants to pay plaintiffs a minimum hourly wage of $7.25 at all relevant times. 29 U.S.C. § 206(a)(1). But New York law obligated defendants to pay plaintiffs a minimum hourly wage of $8.00 from October 23, 2014 to December 30, 2014; $8.75 from December 31, 2014 to December 30, 2015; $9.00 from December 31, 2015 to December 30, 2016; $11.00 from December 31, 2016 to December 30, 2017; $13.00 from December 31, 2017

to December 30, 2018; and $15.00 from December 31, 2018 through December 2020.[3]  N.Y. LAB. LAW § 652(a)(i).  Because New York's minimum wage is higher, plaintiffs may recover those amounts.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

To determine whether defendants paid plaintiffs at least minimum wage, it is first necessary to determine their "regular hourly rate of pay."  As employees of a restaurant, plaintiffs are subject to New York's Hospitality Industry Wage Order ("Order").  See generally N.Y. COMP. CODES R. & REGS. ("N.Y.C.R.R.") tit. 12 § 146.  Under the Order, an "employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  Id. § 146-3.5(b); see also Long Lin v. New Fresca Tortilla, Inc., No. 18 CV 3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), report and recommendation adopted, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).

| Regular Hourly Rate of Pay Calculations for Plaintiff Bautista | | | | |
|---|---|---|---|---|
| Time Period[4] | Total Weekly Earnings | Actual Hours Worked | Regular Hourly Rate of Pay (Total Weekly Earnings / 40 hours) | Required Minimum Wage |
| 11/1/2017 – 12/30/2017 | $300 | 71.5 | $7.50 | $11.00 |
| 12/31/2017 – 12/30/2018 | $300 | 71.5 | $7.50 | $13.00 |
| 12/31/2018 – 12/31/2019 | $300 | 71.5 | $7.50 | $15.00 |

---

[3] This is the minimum wage for "large employers."  Plaintiffs provide no allegations as to how many employees worked for defendants.  However, they use the minimum wages applicable to "large employers"—defined as "[e]very employer of eleven or more employees," N.Y. LAB. L. § 652(1)(a)(i)—in their damages calculations.  (See Damages Chart.)  Given plaintiffs' allegation that JJ's Fusion had over $500,000 in gross annual sales (Compl. ¶ 36), it can be inferred that defendants employed at least eleven people.

[4] I have adjusted the time periods for consistency throughout my calculations to reflect the dates the required minimum wage changed.

| 1/1/2020 – 3/15/2020 | $300 | 71.5 | $7.50 | $15.00 |
|---|---|---|---|---|
| 6/15/2020 – 10/15/2020 | $220 | 74 | $5.50 | $15.00 |

| Regular Hourly Rate of Pay Calculations for Plaintiff Cruz | | | | |
|---|---|---|---|---|
| Time Period | Total Weekly Earnings | Actual Hours Worked | Regular Hourly Rate of Pay (Total Weekly Earnings / 40 hours) | Required Minimum Wage |
| 10/23/2014 – 12/30/2014 | $500 | 74 | $12.50 | $8.00 |
| 12/31/2014 – 12/30/2015 | $550 | 74 | $13.75 | $8.75 |
| 12/31/2015 – 12/30/2016 | $600 | 74 | $15.00 | $9.00 |
| 12/31/2016 – 12/30/2017 | $700 | 74 | $17.50 | $11.00 |
| 12/31/2017 – 12/30/2018 | $700 | 74 | $17.50 | $13.00 |
| 12/31/2018 – 12/31/2019 | $750 | 74 | $18.75 | $15.00 |
| 1/1/2020 – 3/16/2020 | $750 | 74 | $18.75 | $15.00 |

As reflected in the above charts, both plaintiffs worked more than 40 hours per week.  (See also Bautista Decl. ¶¶ 14-15; Cruz Decl. ¶ 14; Damages Chart.)  Therefore, their regular hourly rate of pay is calculated using 40 hours.  Based on plaintiffs' submissions and my own calculations, I find that defendants did not pay Bautista a regular hourly rate of pay that was greater than the New York minimum wage during the time periods at issue but defendants did

pay Cruz a regular hourly rate of pay that was greater than the New York minimum wage during the time periods at issue.[5]

   To calculate the damages that plaintiff Bautista incurred as a result of defendants' failure to pay New York's minimum wage, the difference between the applicable minimum wage and his regular hourly wage is multiplied by forty.  See Long Lin, 2019 WL 3716199, at *3. This number is then multiplied by the number of weeks Bautista worked during the time periods at issue.

   Based on the calculations in the below table and plaintiffs' Damages Chart, I respectfully recommend that plaintiff Bautista[6]  be awarded a total of $38,060 in unpaid minimum wages.

---

[5] It is important to note that based on the regular rate of pay, Cruz was paid above the required minimum wage for a 40-hour week.  However, the regular rate of pay only accounts for 40 of the 74 hours Cruz worked each period.  When one considers Cruz's total weekly earnings each period, he was not paid at the required minimum wage across all 74 hours. Nevertheless, the discussed minimum wage damages account only for Cruz's first 40 hours each period; the remaining 34 hours each period are compensated within the overtime wage calculations in the next section.

[6] Although plaintiffs did not state the income they earned from tips while working for defendants, this omission is irrelevant in the context of defendants' default. In order to reduce an employee's minimum wages by the amount of his or her income from gratuities, state and federal law strictly require employers to: (1) inform employees that they intend to credit tips toward employees' minimum wages, and (2) allow employees to retain all of their income from tips.  29 U.S.C. § 203(m); N.Y.C.R.R. tit. 12, § 146-1.3 (2011); see also Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011) (citing Padilla v. Malapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009)); Chung v. Silver Palace Rest., Inc., 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002).  The facts before me do not show that defendants gave plaintiffs notice that their minimum wages would be reduced by their tip income.  On the contrary, Bautista alleges that defendants never notified him that his tips were being included as an offset for wages and that defendants did not account for these tips in any daily or weekly accounting of plaintiffs' wages.  (Compl. ¶¶ 76-78, 95-96; Bautista Decl. ¶¶ 20-21.)  And, it appears that Cruz did not receive any tip income. (See generally Compl. ¶¶ 40-60; 84-99; Cruz Decl.)  Because at least one (and possibly both) of the prerequisites for a tip credit are not satisfied, plaintiffs' tip income should not detract from their damages.

| Unpaid Minimum Wage Calculations for Plaintiff Bautista | | | | |
|---|---|---|---|---|
| Time Period | Difference Between Minimum Wage & Regular Hourly Wage | Weekly Minimum Wage Shortfall | Number of Weeks | Period Minimum Wage Shortfall |
| 11/1/2017 – 12/30/2017 | $3.50 | $140 | 9 | $1,260 |
| 12/31/2017 – 12/30/2018 | $5.50 | $220 | 52 | $11,440 |
| 12/31/2018 – 12/31/2019 | $7.50 | $300 | 52 | $15,600 |
| 1/1/2020 – 3/15/2020 | $7.50 | $300 | 11 | $3,300 |
| 6/15/2020 – 10/15/2020 | $9.50 | $380 | 17 | $6,460 |
| | | | TOTAL: | $38,060.00 |

     b.  *Overtime Wages*

Next, plaintiffs allege that defendants violated the FLSA and NYLL by failing to pay them overtime wages.  (Compl. ¶¶ 115-17; 124-26; Bautista Decl. ¶¶ 13, 19, 24; Cruz Decl. ¶¶ 13, 21, 25.)  Plaintiffs are entitled to overtime compensation under the FLSA and NYLL at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of 40 during a workweek.  See 29 U.S.C. § 207(a)(1); N.Y.C.R.R. tit. 12, § 142-2.2.  "'[T]he regular rate refers to the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he is employed.'"  Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015) (quoting Walling v. Youngerman Reynolds Hardwood Co., 325 U.S. 419, 424 (1945)).  The method for calculating overtime is the same under both statutes, but plaintiffs may not receive double damages.  See Martinez v. Alimentos Saludables Corp., No. 16 CV 1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

Because plaintiffs' recovery will be greater under the NYLL, damages will be calculated based on their NYLL unpaid wages claim.

Plaintiffs allege that although they consistently worked between 71 and 76 hours per week, defendants never paid them overtime compensation.  (See Compl. ¶¶ 45, 52 68-69, 73; Bautista Decl. ¶¶ 13-15, 24; Cruz Decl. ¶¶ 13-14, 25.)  To calculate the overtime compensation they are owed, the number of hours each plaintiff worked over forty each week is multiplied by 150 percent of the higher of (i) their regular rate of pay, or (ii) the applicable minimum wage. See Long Lin, 2019 WL 3716199, at *3.  This results in the amount of overtime compensation owed to each plaintiff on a weekly basis.  To obtain the total overtime compensation owed for each time period, the weekly amount is multiplied by the number of weeks in that time period.

| Overtime Calculations for Plaintiff Bautista | | | | | | |
|---|---|---|---|---|---|---|
| Time Period | Hours Worked | Hours Over | 150% of Min. Wage | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 11/1/2017 – 12/30/2017 | 71.5 | 31.5 | $16.50 | $519.75 | 9 | $4,677.75 |
| 12/31/2017 – 12/30/2018 | 71.5 | 31.5 | $19.50 | $614.25 | 52 | $31,941.00 |
| 12/31/2018 – 12/31/2019 | 71.5 | 31.5 | $22.50 | $708.75 | 52 | $36,855.00 |
| 1/1/2020 – 3/15/2020 | 71.5 | 31.5 | $22.50 | $708.75 | 11 | $7,796.25 |
| 6/15/2020 – 10/15/2020 | 74 | 34 | $22.50 | $765.00 | 17 | $13,005.00 |
| | | | | | TOTAL: | $94,275.00 |

| Overtime Calculations for Plaintiff Cruz | | | | | | |
|---|---|---|---|---|---|---|
| Time Period | Hours Worked | Hours Over | 150% of Regular Rate of Pay | Weekly Overtime Due | Number of Weeks | Period Overtime Due |
| 10/23/2014 – 12/30/2014 | 74 | 34 | $18.75 | $637.50 | 10 | $6,375.00 |
| 12/31/2014 – 12/30/2015 | 74 | 34 | $20.63 | $701.25 | 52 | $36,465.00 |
| 12/31/2015 – 12/30/2016 | 74 | 34 | $22.50 | $765.00 | 52 | $39,780.00 |
| 12/31/2016 – 12/30/2017 | 74 | 34 | $26.25 | $892.50 | 52 | $46,410.00 |
| 12/31/2017 – 12/30/2018 | 74 | 34 | $26.25 | $892.50 | 52 | $46,410.00 |
| 12/31/2018 – 12/31/2019 | 74 | 34 | $28.13 | $956.25 | 52 | $49,725.00 |
| 1/1/2020 – 3/16/2020 | 74 | 34 | $28.13 | $956.25 | 11 | $10,518.75 |
| | | | | | **TOTAL**: | $235,683.75 |

Based on the calculations in the above tables, I respectfully recommend that plaintiffs be awarded a total of $329,958.75 in unpaid overtime wages, with $94,275.00 to Bautista and $235,683.75 to Cruz.

       c.   *Spread of Hours*

      Plaintiffs also seek spread of hours pay under the NYLL. (Compl. ¶ 129.) "The spread of hours is the length of the interval between the beginning and end of an employee's workday." N.Y.C.R.R. tit. 12, § 146-1.6(a). "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." Id. Thus, for each day plaintiffs worked a shift of more than 10 hours, plaintiffs are entitled to an additional hour of pay at the minimum wage rate. According to plaintiffs, both Cruz and Bautista worked shifts of more than 10 hours between six and seven days per week. (Damages Chart; Bautista Decl. ¶ 14; Cruz Decl. ¶¶ 14-15.) Based on my calculations in the below charts, I

16

respectfully recommend plaintiffs be awarded a total of $33,106.75 in spread of hours wages, with $13,865 to Bautista and $19,241.75 to Cruz.

| Spread of Hours Calculations for Plaintiff Bautista | | | | |
|---|---|---|---|---|
| Time Period | Days per Week That Exceeded 10 Hours | Min. Wage Rate | Number of Days Owed SOH Pay | Amount Due for Period |
| 11/1/2017 – 12/30/2017 | 7 | $11.00 | 60 | $660 |
| 12/31/2017 – 12/30/2018 | 7 | $13.00 | 365 | $4,745 |
| 12/31/2018 – 12/31/2019 | 7 | $15.00 | 366 | $5,490 |
| 1/1/2020 – 3/15/2020 | 7 | $15.00 | 75 | $1,125 |
| 6/15/2020 – 10/15/2020 | 7 | $15.00 | 123 | $1,845 |
| | | | **TOTAL**: | $13,865 |

| Spread of Hours Calculations for Plaintiff Cruz | | | | |
|---|---|---|---|---|
| Time Period | Days per Week That Exceeded 10 Hours | Min. Wage Rate | Number of Days Owed SOH Pay | Amount Due for Period |
| 10/23/2014 – 12/30/2014 | 6 | $8.00 | 60 | $480 |
| 12/31/2014 – 12/30/2015 | 6 | $8.75 | 313 | $2,738.75 |
| 12/31/2015 – 12/30/2016 | 6 | $9.00 | 314 | $2,826 |
| 12/31/2016 – 12/30/2017 | 6 | $11.00 | 313 | $3,443 |
| 12/31/2017 – 12/30/2018 | 6 | $13.00 | 313 | $4,069 |
| 12/31/2018 – 3/16/2020 | 6 | $15.00 | 379 | $5,685 |
| | | | **TOTAL**: | $19,241.75 |

2.  <u>Liquidated Damages</u>

Plaintiffs additionally request liquidated damages for their unpaid minimum

wages, overtime wages, and spread of hours under both the FLSA and NYLL.  (<u>See</u> Faillace Aff.

¶¶ 51-52.)  But, it appears plaintiffs are only seeking liquidated damages under the NYLL.  (<u>See</u>

<u>id.</u> ¶ 53; Damages Chart); <u>see also</u> <u>Rana v. Islam</u>, 887 F.3d 118, 119 (2d Cir. 2018) (noting that

plaintiffs cannot recover cumulative liquidated damages under both the FLSA and NYLL for the

same time period).  Because the NYLL provides a greater amount of recovery, I respectfully

recommend awarding liquidated damages pursuant to the NYLL.  <u>See</u> <u>Rana</u>, 887 F.3d at 119;

<u>Man Wei Shiu v. New Peking Taste Inc.</u>, No. 11 CV 1175, 2014 WL 652355, at *13 (E.D.N.Y.

Feb. 19, 2014).

The NYLL allows plaintiffs to recover liquidated damages in the amount of 100

percent of unpaid minimum wages and overtime wages "unless the employer proves a good faith

basis to believe that its underpayment of wages was in compliance with the law."  NYLL §§

198(1-a), 663; <u>see</u> <u>Garcia v. Giorgio's Brick Oven & Wine Bar</u>, No. 11 CV 4689, 2012 WL

3339220, at *4 (S.D.N.Y. Aug. 15, 2012), <u>report and recommendation adopted</u>, 2012 WL

3893537 (S.D.N.Y. Sept. 7, 2012).  The NYLL also authorizes liquidated damages for spread of

hours claims.  <u>See, e.g.</u>, <u>Hengjin Sun v. China 1221, Inc.</u>, No. 12 CV 7135, 2016 WL 1587242,

at *4 (S.D.N.Y. Apr. 19, 2016).

Here, defendants have not answered or otherwise appeared in this action, much

less demonstrated a "good faith" basis for believing the underpayment of wages was lawful.  I

accordingly recommend that plaintiffs be awarded liquidated damages totaling $401,125.50:

$38,060.00 for their unpaid minimum wages, $329,958.75 for their unpaid overtime, and

$33,106.75 for their unpaid spread of hours wages.

3.  <u>Tools of the Trade</u>

Plaintiffs also allege that they were not reimbursed for "tools of the trade" expenditures.  (Compl. ¶¶ 138-39; Faillace Aff. ¶¶ 45-50.)  Both the FLSA and the NYLL require employers to reimburse their employees for costs associated with the purchase and maintenance of "tools of the trade," where such expenditures bring the employee's wages below the statutory minimum.  <u>See</u> 29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."); N.Y.C.R.R. tit. 12, § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage.").

Bautista requests reimbursement in the amount of $9,140 and Cruz requests reimbursement in the amount of $2,600.  (<u>See</u> Damages Chart.)  Bautista attests that defendants required him to "purchase tools of trade with [his] own money to do [his] job, including three bicycles, a helmet, monthly maintenance costs and replacement motors every 6 months." (Bautista Decl. ¶ 23.)  Cruz avers that defendants required him to "purchase tools of trade with [his] own money to do [his] job, including a shirt and a pair of pants designed specifically for kitchen work."  (Cruz Decl. ¶ 24.)  However, neither plaintiff states in his declaration how much he paid to purchase work clothes or bicycles.  Plaintiffs' submissions also do not provide any information regarding maintenance of the items, particularly the bicycle.  Plaintiffs have submitted no evidence in support of their reimbursement calculations —they have not even

provided an explanation of how they arrived at the requested amounts. Absent such information, I respectfully recommend that plaintiffs' request to recover for tools of the trade be denied.

4. <u>Wage Notices</u>

Plaintiffs also each seek $5,000 in statutory damages for defendants' failure to provide wage notices. New York's Wage Theft Prevention Act ("WTPA") requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances." N.Y. LAB. LAW § 195(1). Employers are required to provide such written wage notices "at the time of hiring." 2014 N.Y. Laws ch. 537 § 1, <u>amending</u> N.Y. LAB. LAW § 195(1-a). Plaintiffs both assert that they did not receive wage notices from defendants when they were hired. (Bautista Decl. ¶¶ 26-28; Cruz Decl. ¶¶ 27-29; Compl. ¶¶ 59, 82, 132-134.) Statutory damages under the WTPA are $50 per day, up to a maximum of $5,000. N.Y. LAB. LAW § 198(1-b)). Based on plaintiffs' declarations, both Bautista and Cruz worked for defendants for over 100 days. (<u>See</u> Bautista Decl. ¶¶ 14-15; Cruz Decl. ¶ 14.) As such, I find both plaintiffs are entitled to the maximum statutory damages for wage notice violations, with Bautista receiving $5,000 and Cruz receiving $5,000.

5. <u>Wage Statements</u>

In addition to the wage notice requirement, "[e]mployers are also required to provide employees with a wage statement with each payment of wages." <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. LAW § 195(3)). Each wage statement must list, among other things, the dates of work covered by the payment of wages, the rate of pay and basis thereof, gross wages, applicable deductions, and allowances claimed as part of the minimum wage. N.Y. LAB. LAW § 195(3). Plaintiffs both allege that they never received such wage statements. (Bautista Decl. ¶¶ 26-28;

Cruz Decl. ¶¶ 27-29; Compl. ¶¶ 58, 81, 135-37.)  As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000."  Pastor, 2017 WL 5625556, at *5 (citing N.Y. LAB LAW § 198(1–d)).  Since both plaintiffs worked more than twenty days after that date, I find that Bautista and Cruz are each entitled to $5,000 for wage statement violations.

      6.   Pre-judgment Interest

      Lastly, plaintiffs request pre-judgment interest.  Plaintiffs may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two distinct purposes of "compensate[ing] a plaintiff for the loss of use of money" and "a penalty," respectively.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted); see also Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020).  The calculation of pre-judgment interest is based on unpaid wages, not liquidated damages.  Fermin, 93 F. Supp. 3d at 49 (quoting Mejia v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), report and recommendation adopted, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor is pre-judgment interest calculated on statutory damages for failure to provide wage notices and statements.  See Feuer v. Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 21, 2020) (citing Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018)).

      The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.  Where damages were incurred at various times, interest may be calculated from a single reasonable intermediate date.  Id. § 5001(b).  The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating pre-judgment interest.  See Fermin, 93

F. Supp. 3d at 49; <u>Ying Ying Dai v. ABNS NY Inc.</u>, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020).

I have determined that the midpoint of Bautista's employment was April 24, 2019 and the midpoint of Cruz's employment was July 4, 2017.  (<u>See</u> Bautista Decl. ¶ 8; Cruz Decl. ¶ 8; <u>see also</u> Damages Chart.)  Accordingly, I respectfully recommend that pre-judgment interest be awarded on Bautista's unpaid wages of $146,200 from April 24, 2019 to the date of this court's judgment at a per diem interest rate of $36.05 ($146,200 x 0.09/365) and on Cruz's unpaid wages of $254,925.50 from July 4, 2017 to the date of this court's judgment at a per diem interest rate of $62.86 ($254,925.50 x 0.09/365).

7.  <u>Post-judgment Interest</u>

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  <u>Id.</u>  Accordingly, I respectfully recommend that plaintiffs be awarded statutory post-judgment interest.  <u>See</u> <u>Fermin</u>, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

C.  <u>Attorney's Fees and Costs</u>

As the prevailing parties, plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL.  <u>See</u> 29 U.S.C. § 216(b), N.Y. LAB. LAW §§ 198, 663(1).  Plaintiffs seek an award of $3,807.50 in attorney's fees and $655 in costs. (<u>See</u> Faillace Aff. ¶¶ 59-60.)

District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 151 (2d Cir. 2008). When exercising their discretion to determine the reasonableness of attorney's fees, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); In re Phelan, 570 N.Y.S.2d 202, 203 (2d Dep't 1991). Plaintiffs have satisfied this requirement. (See Attorney Fees and Costs, attached as Ex. I to Faillace Aff., Dkt. No. 20-9.)

The court next assesses whether plaintiffs' counsel requests a reasonable hourly rate. A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community. Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir.

23

1989).  The "community" is generally considered to be the district where the court sits.  See Arbor Hill, 522 F.3d at 190.  Further, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate."  Id. at 184 n.2 (citations omitted).

Plaintiffs' counsel requests hourly rates of $450 for Michael Faillace, $400 for William K. Oates, and $125 for the paralegal.  (See Faillace Aff. ¶ 61; Attorney Fees and Costs.) I find the requested rate for Mr. Faillace reasonable.  Mr. Faillace was the managing member of Michael Faillace & Associates, P.C., and practiced for thirty-eight years with a specialty in employment law.  (Faillace Aff. ¶ 61.)  The requested rate of $450 per hour is commensurate with the rates routinely awarded in this district to attorneys with comparable backgrounds and experience.  See Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (noting that courts in this district typically award hourly rates ranging from $300 to $450 for partners), report and recommendation adopted, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020); Rodriguez v. Yayo Rest. Corp., No 18 CV 4310, 2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019) (recommending $450 hourly rate for an attorney with thirty-six years of experience), report and recommendation adopted, 2019 WL 4468054 (E.D.N.Y. Sept. 18, 2019).  I however find that the requested rate of $400 for Mr. Oates, an associate with twenty-six years of experience, is higher than the rate typically awarded in this district. (Faillace Aff. ¶ 61); see, e.g., Lopez v. 1923 Sneaker, Inc., No. 18 CV 3828, 2021 WL 1845057, at *10 (E.D.N.Y. Mar. 5, 2021) (awarding hourly rate of $375 for attorney with eighteen years of experience), report and recommendation adopted, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); Gunter v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 1804, 2021 WL 966147 (E.D.N.Y. Feb. 25, 2021) (finding rate of $375 for an attorney with thirteen

years of experience reasonable), report and recommendation adopted, 2021 WL 964921

(E.D.N.Y. Mar. 15, 2021). Accordingly, I respectfully recommend that Mr. Oates' rate be

reduced to $375 per hour. I also find the requested rate of $125 for the paralegal's work to be

higher than the rate typically awarded in this district.  See, e.g., Martinez, 2020 WL 5260579, at

*8 (noting that courts in this district routinely approve hourly rates of $70 to $100 for

paralegals); Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 CV 126, 2019 WL

3937126, at *15 (E.D.N.Y. July 3, 2019) (same); Hernandez v. Delta Deli Mkt. Inc., No. 18 CV

00375, 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (explaining that courts in this district

have found that $90 to $100 is a reasonable hourly rate for paralegals).  Therefore, I respectfully

recommend that the paralegal's rate be reduced to $100 per hour.

        The court next looks to the reasonableness of the hours billed.  To determine the

reasonableness of the hours spent on the litigation, the court must make "a conscientious and

detailed inquiry into the validity of the representations that a certain number of hours were

usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195,

2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d

131, 134 (2d Cir. 1994)).  The "critical inquiry is 'whether, at the time the work was performed,

a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v.

Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The court may exclude those hours that it finds

excessive, redundant, or otherwise unnecessary.  See Gordon v. Site 16/17 Dev., LLC, No. 11

CV 427, 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011).  In lieu of an itemized reduction,

the court may make an across-the-board percentage reduction.  See Kirsch v. Fleet Street, Ltd.,

148 F.3d 149, 173 (2d Cir. 1998).

Here, plaintiffs' counsel seeks compensation for 15.9 hours of work. Of the total, Mr. Faillace worked 2.3 hours, Mr. Oates worked 3.9 hours, and the paralegal worked 9.7 hours. (See Attorney Fees and Costs.) Having reviewed the submitted time records, I find the claimed number of hours reasonable except for those billed by Mr. Faillace. See, e.g., Fermin, 93 F. Supp. 3d (accepting 26.4 hours of billed attorney work as reasonable in a default judgment FLSA case). Mr. Faillace's billings involved tasks such as "review[ing] court notices of appointment of judge and magistrate[,]" "direct[ing] staff to update case chart[,]" "fil[ing] notices in proper folder for future reference[,]" "review[ing] affidavits of service filed in court[,]" "fil[ing] affidavits in the proper folder for future reference[,]" and sending emails. (See Attorney Fees and Costs). In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by twenty percent and another's by thirty percent for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a twenty percent reduction for redundancy). I find Mr. Faillace's billings to include redundant or unnecessary tasks and I respectfully recommend reducing his fees by fifty percent. Accordingly, I respectfully recommend that plaintiffs be awarded $2,950 in attorney's fees, consisting of $517.50 for Mr. Faillace's fees (($450 × 2.3 hours) × .50), $1,462.5 for Mr. Oates' fees ($375 × 3.9 hours), and $970 for the paralegal's fees ($100 × 9.7 hours).

Plaintiffs additionally request compensation for $655 in costs, representing $400 for this court's filing fee and $255 in service of process fees.  (See Attorney Fees and Costs.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying."  Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiffs have submitted sufficient documentary evidence for these costs.  (See Attorney Fees and Costs.)  Accordingly, I find plaintiffs' requested costs to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiffs' motion be granted and that default judgments be entered against all defendants jointly and severally. Regarding damages, I respectfully recommend that plaintiffs be awarded a total of $822,251, as follows:

|  | Unpaid Wages | Liquidated Damages | Statutory Damages | Total Damages |
|---|---|---|---|---|
| Bautista | $146,200 | $146,200 | $10,000 | $302,400 |
| Cruz | $254,925.50 | $254,925.50 | $10,000 | $519,851 |

I further recommend that pre-judgment interest be awarded on Bautista's unpaid wages of $146,200 from April 24, 2019 to the date of this court's judgment at a per diem interest rate of $36.05 and on Cruz's unpaid wages of $254,925.50 from July 4, 2017 to the date of this court's judgment at a per diem interest rate of $62.86.  I also recommend that post-judgment interest be awarded to both plaintiffs at the rate set forth in 28 U.S.C. § 1961(a).  Finally, I recommend that plaintiffs receive $2,950 in attorney's fees and $655 in costs.

Plaintiffs are directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation.  Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Chief Judge Brodie and to my chambers, within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Respectfully submitted,


_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge


Dated: Brooklyn, New York
         January 11, 2022

28